IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

EAGLE OIL & GAS CO., ET AL.,            §
                                        §
            Plaintiffs,                 §
                                        §
vs.                                     §        CIVIL ACTION NO. 7:12-CV-00133-O
                                        §
TRAVELERS PROPERTY CASUALTY             §
COMPANY OF AMERICA, ET AL.,             §
                                        §
            Defendants.                 §

**SUBJECT TO THEIR MOTION TO REMAND,
PLAINTIFFS' PROPOSED SECOND AMENDED COMPLAINT**

Subject to their Motion to Remand, and pursuant to the deadlines established by the

Court, plaintiffs, Eagle Oil & Gas Co., Eagle Wolfbone Energy Partners, LP, Eagle Oil & Gas

Partners, LLC, and Riverford Exploration, LLC (collectively "plaintiffs"), file this Plaintiffs'

Second Amended Complaint against defendants, Travelers Property Casualty Company of

America, GW Sones Petroleum Consulting, LLC, and York Risk Services Group, Inc., and

respectfully show this Court the following:

### I. JURISDICTION

1.      Plaintiffs do not submit to and, per their motion to remand, object to and contest the

subject matter jurisdiction of this Court.  There is no diversity or federal question jurisdiction.

Plaintiffs are citizens of the State of Texas as is GW Sones Petroleum Consulting, LLC.

Plaintiffs are only filing this complaint in order to meet the Court's scheduling order deadline for

amended pleadings.

### II. PARTIES

2.      Plaintiff, Eagle Oil & Gas Co. ("Eagle Co."), is a Texas corporation doing business in

this state in the oil and gas industry. Its principal place of business is in Texas.

3.      Plaintiff, Eagle Wolfbone Energy Partners, LP ("Eagle Wolfbone"), is a Texas limited partnership doing business in this state in the oil and gas industry.  Its limited partners are citizens of Texas.

4.      Plaintiff, Eagle Oil & Gas Partners, LLC ("Eagle Partners"), is a Delaware limited liability company doing business in this state in the oil and gas industry.  Its principal place of business is in Texas.

5.      Plaintiff, Riverford Exploration, LLC ('Riverford"), is a Texas limited liability company doing business in this state in the oil and gas industry.  Its principal place of business is in Texas.

6.      Defendant, Travelers Property Casualty Company of America ("Travelers"), is a Connecticut organized insurer, licensed in Texas to conduct insurance business in Texas.  Its principal place of business for its specialty oil and gas insurance underwriting and claims is in Houston, Texas, as related to the insurance at issue herein.  It has appeared and answered the suit so it may be served by forwarding this to its counsel of record.

7.      Defendant, GW Sones Petroleum Consulting, LLC ("Sones"), is a Texas limited liability company doing business in this state.  Its principal place of business is in Texas.  It unquestionably is a Texas citizen.  It has appeared and answered the suit so it may be served by forwarding this to its counsel of record.

8.      Defendant, York Risk Services Group, Inc. ("York"), is a New York corporation doing business in Texas as an energy loss adjuster.  Plaintiffs are unaware of York's principal place of business other than other parties' allegations on the removal/remand issues alleging York is not a citizen of Texas.  It may be served with process by serving a summons on its registered agent in Texas, Corporation Service Company, 211 E. 7th St., Suite 620, Austin, TX  78701-3218.

### III. VENUE

9.      If the Court has subject matter jurisdiction, which is not admitted, venue will be proper in the Wichita Division of the Northern District of Texas under 28 U.S. C. § 1391(b)(2) because the contract at issue in this suit was delivered and breached in Wichita County, Texas, and a substantial part of the events giving rise to the claim occurred in this county.

### IV. FACTS

10.      Eagle Co. was the operator under a Joint Operating Agreement ("JOA") in the drilling and development of the Monroe 39 #2H oil and gas well ("the Well") in Reeves County, Texas. Eagle Co. holds an 8.34718533% ownership interest in the Well.  Eagle Wolfbone, Eagle Partners, and Riverford are non-operators under the JOA, having respective 24.69788099%, 30.14705911%, and 0.13235294% ownership interests in the Well.

11.      On September 22, 2011, during the fourth stage of the Well's fracking operation, a section of down-hole casing parted.  Thereafter, there was an unintended flow of gas and well fluids above the surface that could not be controlled by any wellhead equipment or other means. With the use of third party contractors, after more than a month of attempts and based on recommendations and instructions from the Texas Railroad Commission, Eagle Co. eventually got the Well under control, but was forced to plug and abandon the Well.  Plaintiffs incurred and paid millions of dollars in costs for bringing the Well under control, and for pollution and cleanup costs.  Eagle Co. advised Travelers of its intent to redrill the Well and, in fact, has redrilled the Well.  Eagle Co., Eagle Wolfbone, Eagle Partners and Riverford participated in the redrill, and paid their respective shares, based on ownership interests that changed as related to other non-operators who did or did not participate in the redrill.  Such percentages will be shown through disclosures/discovery and proven at trial.

12.     Eagle Co. carried Control of Well Policy No. VI04200283 ("the Policy") with Travelers, in which Eagle Wolfbone, Eagle Partners and Riverford are additional insureds.  The Policy was effective from June 10, 2011 to June 10, 2012.  Eagle Co. timely notified Travelers of the control of well event. The day after the incident, Travelers appointed BC Johnson Associates ("BCJA") to investigate and adjust the claim.  BJCA is an unincorporated division or unit or trade name of defendant York, and York is therefore responsible and liable for actions of BCJA.  BCJA began its investigation using petroleum engineers as the adjusters.  It asked for and received certain information from Eagle Co.  However, without fully understanding the technical aspects of the claim and without seeking or obtaining the proper information related to the claim, BJCA issued a report to Travelers, dated October 21, 2011, that was both incomplete and inaccurate, even as an initial report. Among other things, the report and BCJA's subsequent investigation failed to consider important aspects of the claim such as, for example, the proper standards of conduct of Eagle Co. and proper actions allowed by the Texas Railroad Commission, among others. BCJA failed to consider other possible causes of the incident, the most obvious being a possible defect in the casing or that the casing was adversely affected by other factors, including but not limited to, environmental factors.  Pipe defects and environmental factors have become recurring issues in the oilfield with the increase in fracking activity such that insurers and adjusters are or should be aware of the existence of same as possible causes of well control events.   BJCA's incomplete and inaccurate investigation and adjustment formed a part of and led Travelers to issue a reservation of rights letter to Eagle Co. dated November 30, 2011, which made inaccurate statements related to Railroad Commission Rules as applied to the operation and wrongly asserted policy provisions based on incorrect conclusions concerning Eagle Co.'s conduct in the operations.

13.     Apparently, Travelers became dissatisfied with BCJA's investigation and adjustment, most likely due to BJCA's incorrect assessment of Texas Railroad Commission rules, and, in early March 2012, Travelers hired defendant Sones to perform, in its principal Greg Sones' own words: "an engineering and operations review and an evaluation of the failure."   More to the point, Sones was assigned the specific task of determining whether plaintiff Eagle Co. acted with diligence during its operation of the Well.   Travelers sought this information because its Policy contains a "Due Diligence and Warranties" clause.   Specifically, the Policy states: "[i]t is a condition that the Insured must exercise due care and diligence in the conduct of all operations with respect to any 'well insured,' and by utilizing all safety practices and equipment generally considered prudent for such operations." The Policy further contains an exclusion of coverage for breaches of the Due Diligence clause.

14.     A simple review of the insurance policy at issue reveals it does not provide standard liability or property coverage.  It is a technical and specialty oil and gas insurance policy utilized solely for insuring blowouts and related costs and expenses.   Clearly, it does not lend itself to traditional investigation and adjustment; specialized oil and gas related investigation and adjustment are required.   Before Sones became involved in the due diligence investigation, Travelers had a preliminary opinion from BCJA that Eagle Co. may have violated the Policy's Due Diligence clause because BCJA believed the wellhead needed to be attached to the Well's 13 3/8" casing rather than the 9 5/8" casing.    Travelers used this as a basis for its initial reservation of rights letter to Eagle Co., without adequately investigating it.    Upon further review, Travelers came to believe BCJA was in over its head with the technical aspects and needed help with the investigation and adjustment.   After reviewing claims materials for a few weeks in March 2012, Sones met with Travelers' lawyers, as well as BCJA, to discuss the

wellhead issue and Sones' new theories regarding Eagle Co.'s lack of diligence in other areas of the Well's operation.

15.     At this meeting, or at some point prior to April 11, 2012, Sones relayed his preliminary conclusion to Travelers that the wellhead being attached to the 9 5/8" casing was a non-issue because it complied with the Texas Railroad Commission rules, and, as such, Eagle Co. did not violate any standards of diligence in attaching it to the casing in the way it did.   Sones then voiced his concerns over Eagle Co.'s pressuring the casing higher than the original plan in order to kick start the fourth stage of the frac operation.   In short, Sones disagreed with the BCJA adjusters and came up with his own policy coverage adjustment opinions, which opinions would allegedly support a denial of coverage on a lack of due diligence based on over-pressurizing the casing.  Sones set off on a path to substitute his opinions for those of the BCJA adjusters, who themselves are petroleum engineers.   Sones was then given instructions from Travelers' counsel to continue his investigation of Eagle Co.'s actions.   Sones requested that the attorneys for Travelers collect from Eagle Co. a specific list of information and documents for his further investigative review.   The information and documentation requested by Sones targeted the decision-making of Eagle Co. and its contractors concerning, among other things, the fracturing operation and the decisions made prior to the casing failure as to the pressures exerted on the casing, specifically with regard to Eagle Co.'s diligence in such operations.

16.     At some point prior to April 11, 2012, Sones reported his conclusions and opinions regarding the pressurized casing to Travelers.   In fact, Sones' preliminary conclusions appear in Travelers' April 11, 2012 reservation of rights letter to Eagle Co.   Sones acknowledged in his deposition that the following conclusions and opinions appearing in the letter originated from him:

- "industry practice is to not pressure pipe within 10 percent of its pressure tolerance."

- "Thus, pressure on the 7" casing should not have exceeded 9000-9050psi (its pressure rating was 9950psi)."

- "Moreover, in surging the 7" casing at pressures in excess of the design pressure of 8500psi, it appears Eagle did not account for the fact it had drilled through the 7" casing for several days.  Working through pipe typically causes deterioration; therefore, maximum pressure on the pipe should be lower than what it would be for new pipe."

- "the rate of the pressure cycles through the 7" casing during frac stage 4 created a "dynamic loading" on the pipe.  The pressure up and down on each cycle was rapid, which [increased] the high pressure forces."

- "Considering the foregoing facts as known to date, it appears Eagle may have failed to exercise…diligence in its stage 4 frac operation."

17.    Sones  further  discussed  with  Travelers'  attorneys  his  belief  that  Eagle Co. did not recognize the limits of the 7" casing based on the way he saw it was run in the hole, the way it was inspected, and the way it was used.   Sones stated that Eagle Co.'s actions concerning the 7" casing likely placed the casing in a "zone of potential failure" and that a good engineer would expect a failure if the actions allegedly taken by Eagle Co. occurred.   Travelers' April 11, 2012 letter stated that "[i]t also appears that Eagle may have expected the casing failure to occur by exceeding its 8550psi design criteria, and industry practice by pressuring the 7" casing beyond 9000psi."    Again, Travelers adopted Sones' conclusions that Eagle Co. expected the casing failure to occur by placing the casing in a "zone of potential failure."

18.     In continuing where the BCJA adjusters failed with their investigation and miscue on a potential denial of coverage basis, Sones honed his investigation of diligence with the requested documentation in Travelers' April 11, 2012 letter.   Sones received much of what he requested in his due diligence investigation, and at some point between early April and early June 2012, he finalized his conclusions and opinions that Eagle Co. did not exercise diligence in the frac operations and that the blowout did not cause the casing to part.

19.     Greg Sones, as a representative for Travelers, met with Eagle Co. in Dallas, Texas on June 14, 2012, to discuss the results of his investigation of the claim and to ask for further information directly from Eagle Co.   Sones had already arrived at his conclusion that Eagle Co. had not been diligent with its frac operation before this meeting took place.   At the meeting, Sones gave Eagle Co. a chance to supply him with any information it may have to change his mind; he stated that he received no such information, despite being given the daily drilling reports and other information and being challenged as to why he did not consider other things that Eagle Co. advised should have been considered.   Sones stated his conclusions quite strongly in this meeting, even arguing the points with Eagle Co.'s President, COO and Head Engineer, Darrell Lohoefer.

20.     On July 5, 2012, three weeks after the meeting, Travelers sent its Denial of Coverage Letter to Eagle Co.   This letter contains the following conclusions/opinions reached by Sones and relayed to, and adopted by, Travelers:

- "Travelers' understanding is that pressures approaching 9000psi would have placed the 7-inch casing into a zone of potential failure, which is what ultimately occurred."

8

- "Despite the planned limitation of the wellbore pressure, Eagle elected to exert higher pressure on the 7-inch casing and it appears that this higher pressure caused the failure of the casing and the blowout ensued."

- "The cycling of the pressures exacerbated the well conditions."

- "the repeated pressure excursions far in excess of the designed pressure tolerances…[was] a failure to exercise…diligence in the conduct of the frac job."

- "Significantly, the casing parted before – not as a result of – the blowout."

Travelers also incorporated the positions from its April 11, 2012 letter into its Denial Letter. Significantly, Travelers left out of its Denial Letter the misguided coverage conclusions on due diligence formulated by BCJA petroleum engineering adjusters and substituted those of its new investigator and adjuster-in-fact, Sones. From Sones' admissions noted above that the conclusions contained in both the April 11, 2012 reservation of rights letter and the July 5, 2012 denial of coverage letter were Sones' conclusions, Travelers' denial of coverage was based, in whole or in part, on Sones' opinions and conclusions regarding his investigation into Eagle Co.'s actions during the frac operation.

21.     Neither Sones' nor BCJA's investigations took into consideration operational standards and procedures regularly practiced by Eagle Co and companies similar to Eagle Co. in the oil and gas industry before reaching their conclusions.  At least one such practice is that in the conduct of operations, the equipment used should not be pressured above the manufacturer's rated capacity.  Eagle Co. advised Travelers, BCJA and Sones that none of the equipment used was pressured above manufacturer's rated capacities.   Through their own investigations, Travelers, BCJA and Sones were made aware of the fact that the pressures encountered did not exceed rated capacities of the equipment and that such is the practice for well operators similar to

Eagle Co. operating in the same area and drilling and completing wells under similar conditions as the subject Well. Instead, the defendants chose to use the practices of the global major oil companies which are not and were not applicable to the subject well completion operation as performed by Eagle Co. Nothing in the subject Policy requires application of how the global major oil companies might conduct their operations. The oilfield contractor/vendor that performed the fracking operation is a recognized leader in such operations and has advised there are no standards applicable to such operations other than the standard of not exceeding manufacturer's rated capacities, and has confirmed neither it nor Eagle Co. exceeded such capacities on the subject operation.  Further, Sones, BCJA and Travelers failed to consider other potential causes of loss other than Eagle Co.'s lack of due diligence, despite being requested to consider other possible causes such as a defect in the pipe or other possible influences such as, for example, environmental hydrogen cracking of the pipe, or other possible environmental influences.  Sones performed an incomplete, inadequate, and outcome-oriented investigation, which led to the conclusion sought by Travelers, so that Travelers could deny plaintiffs' claims. Travelers did not cite any other basis for denying Plaintiffs' claims other than Sones' conclusions. Sones' conclusions are insurance coverage conclusions because they mirrored Policy language and were the only bases used for the denial of plaintiffs' claim.

22.    On information and belief, Sones used some of BCJA's investigation and/or work product in coming to the incorrect conclusions made by Sones.  As noted in this complaint, BCJA conducted an incomplete, inadequate, and outcome-oriented investigation, which has ultimately led to improper conclusions that Eagle Co.'s lack of due diligence caused the September 22, 2011 event and subsequent losses. As noted above, BCJA failed to properly recognize standards regularly practiced by Eagle Co. and other similar companies in the oil and

gas industry in reaching its conclusions.  BCJA also failed to consider other possible causes of loss other than Eagle Co.'s alleged lack of due diligence.  Also, BCJA improperly adjusted the claim to deny plaintiffs' costs and expenses that are properly recoverable under the Policy.  After over a year of investigating and adjusting this claim, Travelers, BCJA and Sones still have not completed their investigation.  Such a delay is unreasonable.  Travelers relied, in whole or in part, on the investigations performed, and the conclusions reached, by BCJA and Sones and used the same to wrongfully delay and deny plaintiffs' claims for insurance coverage.

23.     On March 29, 2012, Eagle Co. for itself and all of the covered co-venturers, (which included one other non-operator not a party to this suit) submitted to Travelers a reimbursement claim of $2,979,689.47 for their total share of the well control costs and pollution/cleanup costs that they each paid.  Additional covered costs have been incurred since then, making the current net total for well control and pollution/cleanup costs in the amount of $3,812,272.41.  Eagle Co. also submitted to Travelers the estimate for costs to redrill the well, as covered by the redrill section of the subject Policy.  Travelers denied all of Eagle Co.'s claims on July 5, 2012, prior to the start of the redrill.  Eagle Wolfbone's claims were denied on the (incorrect) basis that it was not a covered co-venturer, and Eagle Partners' claims were denied or are still under investigation more than a year after the event.  Travelers has paid Riverford a portion of the claim but has denied the vast majority of its claim.

24.     Travelers wrongfully cited a Policy condition relating to operational due diligence in its denial of coverage of all of Eagle Co.'s claims under the control of well, pollution and cleanup, and the redrill sections of the Policy, despite the fact that Eagle Co.'s actions concerning the fracking of the Well, the subsequent actions for controlling the Well, pollution costs and cleanup operations,  the  plugging  and  abandonment  of  the  Well,  and  the  redrill  were/are  practices

regularly and successfully done many times in the past and are accepted practices in the oil and gas industry for an operator such as Eagle Co., and are covered by the Policy.  Travelers wrongly asserts that Eagle Wolfbone was not a co-venturer entitled to coverage, even though it has documentation supporting Eagle Wolfbone's claims as a co-venturer.  Eagle Wolfbone was a co-venturer in the Well and paid its share of the costs and expenses and its claims are covered under the Policy, which have been wrongfully denied. Travelers has wrongfully denied or has refused to pay all of the claims of Eagle Partners and has wrongfully denied or refused to pay Riverfords' redrill costs and certain of its other costs and expenses covered under the Policy.  By virtue of the fact Travelers has paid nothing to the plaintiffs (except for a small amount due to Riverford), defendants actions have delayed payments due under the policy.

25.     Travelers paid approximately $4,600 for certain of Riverford's claims and on information and belief paid certain of one of the other covered non-operator's claims which had a very small interest in the Well. Also, on information and belief, other insurers of other non-operators in this Well have paid the claims for this incident on policies substantially similar in all material respects to the Policy in issue.  Travelers has favored certain of its insureds over others, without good cause. On information and belief, Travelers has taken positions on this claim that are inconsistent with positions it has taken on other similar claims.

26.     Plaintiffs will refer the Court and jury to the letters issued by Travelers to plaintiffs.  All reasons and alleged justifications for Travelers' denials of plaintiffs' insurance claims are wrongful and in breach of the insurance contract and give rise to the claims asserted herein.

The above facts and all reasonable inferences that flow therefrom, as well as other facts to be shown at trial, are incorporated in and support the following causes of actions:

## V. CAUSES OF ACTION AGAINST TRAVELERS

### Breach of Contract

27.a.   Eagle Co., for itself and for co-venturers electing coverage, entered into an insurance contract with Travelers, who was then obligated to provide coverage for plaintiffs for any control of well incident at an insured well.  The Well was an insured well.  On September 22, 2011, the Well became a well out of control.  Travelers contractually agreed to cover and pay plaintiffs' claims. Travelers materially breached the Policy by wrongfully denying plaintiffs' claims under the Policy, and the breach has caused plaintiffs to sustain substantial damages far in excess of the minimum jurisdictional requirements of this Court.   Plaintiffs seek all damages caused by Travelers' breach as allowed by law.  Plaintiffs also seek their attorneys' fees pursuant to Texas Civil Practices and Remedies Code § 38.001, and all other damages allowed by law.

27.b.   Pleading in the alternative, plaintiffs would show that the policy provisions in question are ambiguous in that the Due Diligence and Warranties clause and the related exclusion, relied upon by Travelers to deny coverage, may be subject to more than one reasonable meaning.  The words "generally considered prudent" as contained in the subject clause, have more than one reasonable meaning.  One such meaning is what Eagle Co. and its co-venturers considered as prudent, as opposed to what someone else considered as prudent.  Plaintiffs considered the operations to be prudent.  Any reasonable interpretation that favors coverage must be adopted by the Court.   Among other possible meanings, plaintiffs believe the provisions should be interpreted to mean that compliance with the manufacturers rated capacities of the equipment in issue is sufficient to meet these Policy provisions. Also, there is ambiguity by virtue of the fact that the insurer can, after a claim has occurred, apply a set of its own standards that are not in writing and that have no application to what the insured believes are prudent operations it has

already conducted.  The failure to have clear and easily understood policy provisions that can be objectively applied and are not subject to after-the-fact second guessing by differing expert opinions makes the policy provisions ambiguous.  Additionally, having both an exclusion and a condition/warranty on the same thing in the Policy creates ambiguity and should require that the insurer prove application of the exclusion. Plaintiffs reserve the right to contest other provisions of the Policy as ambiguous for any and all other reasons as may be shown through discovery and trial.

## Breach of Duty of Good Faith and Fair Dealing

28.     As plaintiffs' insurer on the subject Policy, Travelers has a fiduciary duty to deal with plaintiffs fairly and in good faith.  Travelers' denial and delay of payment of plaintiffs' claims, when it knew or should have known that coverage was reasonably clear, are breaches of Travelers' duty to deal fairly and in good faith.  These breaches proximately caused damages to plaintiffs in excess of the minimum jurisdictional limits of this Court.  Travelers' breach of this duty has caused plaintiffs damages independent of the Policy benefits, and Travelers' conduct in denial of plaintiffs' claims was fraudulent, malicious, intentional, and/or grossly negligent.  As a result, plaintiffs are entitled to exemplary damages.

## Insurance Code Violations

29.a.   Travelers is a "person engaged in the business of insurance" as defined by the Texas Insurance Code.  By virtue of its wrongful denial of plaintiffs' claims for coverage, unreasonable and inadequate investigation, improper claims handling, and other acts and omissions, as stated throughout this complaint, Travelers has violated one or more of the following provisions of § 541, subsection B, and § 542 of the Texas Insurance Code:

- Making statements misrepresenting the terms of the Policy. § 541.051.

- Misrepresenting material facts or policy provisions relating to coverage. § 541.060(a)(1).

- Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when its liability became reasonably clear. § 541.060(a)(2)(A).

- Failing to promptly provide to plaintiffs a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the denial of plaintiffs' claim. § 541.060(a)(3).

- Failing to affirm or deny plaintiffs' claim within a reasonable time. § 541.060(a)(4)(A).

- Refusing to pay plaintiffs' claim without conducting a reasonable investigation. § 541.060(a)(7).

- Making untrue statements of material fact. § 541.061(1).

- Failing to state a material fact necessary to make other statements made not misleading. § 541.061(2).

- Making statements that would mislead a reasonable, prudent person to a false conclusion of a material fact. § 541.061(3).

- Making a material misrepresentation of law. § 541.061(4).

- Unfair methods of competition, and/or unfair or deceptive acts or practices in the business of insurance, and unlawful deceptive trade practices. §§ 541.151 (1) and (2).

- Unfair claim settlement practices designated in §§ 542.003(a), (b)(1)-(4).

- Unfairly delaying the payment of plaintiffs' claim as prohibited by § 542.058(a).

All of the above violations caused plaintiffs to sustain damages in excess of the minimum jurisdictional limits of this Court.  In addition, for all violations of § 542 of the Texas Insurance Code, plaintiffs seek interest on their claim in the amount of 18% per year, as well as reasonable attorneys' fees as provided by § 542.060 of the Texas Insurance Code.  Further, all of the above acts were knowingly committed by Travelers.  Accordingly, plaintiffs seek additional damages up to three times the amount of their actual damages as provided for in § 541.152 of the Texas Insurance Code.  Plaintiffs reserve the right to seek damages for any other Insurance Code violation that may be shown through discovery and proven at trial.

29.b.   Further, as authorized by § 541.151 of the Texas Insurance Code, to the extent applicable to one or more of the plaintiffs who may qualify as a consumer, such plaintiffs allege that the following actions by Travelers were "false, misleading, or deceptive acts or practices", as defined in § 17.46(b) of the Business & Commerce Code:

- Representing that goods or services have benefits or qualities which they do not have. § 17.46(b)(5).

- Representing that goods or services are of a particular standard, quality, or grade…if they are of another. § 17.46(b)(7).

- Disparaging the goods, services, or business of another by false or misleading representation of facts.  § 17.46(b)(8).

- Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, which are prohibited by law.  § 17.46(b)(12).

All of the above acts were committed knowingly by Travelers.  Plaintiff(s) to which this applies detrimentally relied on Travelers to conduct reasonable and proper investigations of and adjustment for the loss which were not done.  Plaintiff(s) sustained damages as a result. Plaintiff(s) reserve the right to seek damages for any other DTPA violation that may be shown through discovery and proven at trial.

## VI. CAUSES OF ACTION AGAINST SONES AND YORK

30.a.   Sones and York are "persons" under the Texas Insurance Code and were/are engaged in the business of insurance.   In the course and scope of conducting inadequate, incomplete, unreasonable, and outcome-oriented investigations and conclusions regarding the loss and Eagle Co.'s due diligence in operating the Well, Sones and York violated of the following provisions of § 541, subsection B, of the Texas Insurance Code:

- Misrepresenting material facts or policy provisions relating to coverage.  § 541.060(a)(1).

- Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when liability became reasonably clear.  § 541.060(a)(2)(A).

- Failing to promptly provide to plaintiffs a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the denial of plaintiffs' claim.  § 541.060(a)(3).

17

- Refusing to pay plaintiffs' claim without conducting a reasonable investigation. § 541.060(a)(7).

- Making untrue statements of material fact. § 541.061(1).

- Failing to state a material fact necessary to make other statements made not misleading. § 541.061(2).

- Making statements that would mislead a reasonable, prudent person to a false conclusion of a material fact. § 541.061(3).

- Unfair methods of competition, and/or unfair or deceptive acts or practices in the business of insurance, and unlawful deceptive trade practices. §§ 541.151 (1) and (2).

- Unfair claim settlement practices designated in §§ 542.003(a), (b)(1)-(4).

- Unfairly delaying the payment of plaintiffs' claim as prohibited by § 542.058(a).

All of the above violations caused plaintiffs to sustain damages in excess of the minimum jurisdictional limits of this Court.  In addition, for all violations of § 542 of the Texas Insurance Code, plaintiffs seek interest on their claim in the amount of 18% per year, as well as reasonable attorneys' fees as provided by § 542.060 of the Texas Insurance Code.  Further, all of the above acts were knowingly committed by Sones and York.  Accordingly, plaintiffs seek additional damages up to three times the amount of their actual damages as provided for in § 541.152 of the Texas Insurance Code.  Plaintiffs reserve the right to seek damages for any other Insurance Code violation that may be shown through discovery and proven at trial.

30.b.    Further, as authorized by § 541.151 of the Texas Insurance Code, to the extent applicable to one or more of the plaintiffs who may qualify as a consumer, such plaintiffs allege that the following actions by Sones and York were "false, misleading, or deceptive acts or practices", as defined in § 17.46(b) of the Business & Commerce Code:

- Representing that goods or services have benefits or qualities which they do not have. § 17.46(b)(5).

- Representing that goods or services are of a particular standard, quality, or grade…if they are of another. § 17.46(b)(7).

- Disparaging the goods, services, or business of another by false or misleading representation of facts.  § 17.46(b)(8).

- Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, which are prohibited by law.  § 17.46(b)(12).

All of the above acts were committed knowingly by Sones and York.  Plaintiffs detrimentally relied on Sones and York to conduct reasonable and proper investigations of and adjustments for the loss.  Plaintiff(s) sustained damages as a result.  Plaintiff(s) reserve the right to seek damages for any other DTPA violation that may be shown through discovery and proven at trial.

## VII. CONDITIONS PRECEDENT

31.    All conditions precedent to plaintiffs' right to recover in this suit have occurred or have been performed.

## VIII. DAMAGES

32.    Plaintiffs seek actual damages resulting from all causes of action pled above, all extra-contractual damages, exemplary damages, all damages allowed by law for knowing violations,

treble damages as provided for under § 541.152 of the Texas Insurance Code, 18% statutory penalty interest damages, as well as reasonable and necessary attorneys' fees and expenses, experts fees and expenses, pre and post judgment interest and costs of court.

## IX. JURY DEMAND

33.    Plaintiffs demand a jury trial on all facts and issues allowable under the Seventh Amendment to the U.S. Constitution.

## X. PRAYER

34.    In light of the foregoing, but subject to and without waiving the motion to remand the case to state court due to lack of subject matter jurisdiction, plaintiffs, Eagle Oil & Gas Co., Eagle Wolfbone Energy Partners, LP, Eagle Oil & Gas Partners, LLC, and Riverford Exploration, LLC, pray all defendants be summoned to appear,  and that upon trial plaintiffs have judgment against such defendants, Travelers Property Casualty Company of America, GW Sones Petroleum Consulting, LLC, and York Risk Services Group, Inc., for the following:

a.    Actual damages amounting to the total of plaintiffs' claims under the Policy which ultimately may equal or exceed the limits of the Policy of $10,000,000.00;

b.    Exemplary damages;

c.    Additional damages under the Texas Insurance Code up to three times the amount of actual damages;

d.    Statutory penalty interest damages resulting from delay in payment;

e.    Pre-judgment and post-judgment interest;

f.    Court costs;

g.    Attorneys' and experts' fees and expenses; and

h.    All other relief to which plaintiffs may be entitled.

Respectfully submitted,

MEYER ORLANDO LLC


_____/s/ Michael A. Orlando_____

Michael A. Orlando, Attorney-in-charge
Texas Bar No. 15302700
morlando@meyerorlando.com
Kristi L. Hamilton
Texas Bar No. 00787118
khamilton@meyerorlando.com
Mike A. Orlando, Jr.
Texas Bar No. 24070367
mikejr@meyerorlando.com
MEYER ORLANDO LLC
13201 Northwest Freeway, Suite 119
Houston, Texas 77040
Telephone:  (713) 460-9800
Facsimile:   (713) 460-9801

And

Local Counsel

Brad Altman
State Bar No. 00796120
brad@altmanlegal.com
William K. Altman
State Bar No. 01122000
Patrick R. Scott
State Bar No. 24061516
ALTMAN LEGAL GROUP
2525 Kell Blvd. Suite 500
Wichita Falls, Texas 76308
Telephone: (940) 761-4000
Facsimile:  (940) 766-3327


ATTORNEYS FOR PLAINTIFFS
EAGLE OIL & GAS CO., EAGLE WOLFBONE
ENERGY PARTNERS, LP, EAGLE OIL & GAS
PARTNERS, LLC, AND
RIVERFORD EXPLORATION, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been forwarded to the following counsel by electronic filing, hand delivery, facsimile transmission, and/or regular or certified mail, return receipt requested and/or any other method available under the Federal Rules of Civil Procedure on this 30th day of January, 2013.

*Via email: cbarnard@charlesbarnardlaw.com*
Charles M. Barnard
811 Sixth Street, Suite 2010
Atrium Building
Wichita Falls, Texas 76301

*Via email: chall@hallmaineslugrin.com*
J. Clifton Hall, III

*Via email: stippit@hallmaineslugrin.com*
Stephanie Rennell Tippit

*Via email: mwitherel@hallmaineslugrin.com*
Matthew Witherel
Hall Maines Lugrin, P.C.
Williams Tower, Suite 6400
2800 Post Oak Boulevard
Houston, Texas 77056-6125

        /s/ *Michael A. Orlando*
Michael A. Orlando