**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **EAGLE OIL & GAS CO. et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:12-cv-00133-O** |
| | § | |
| **TRAVELERS PROPERTY CASUALTY** | § | |
| **COMPANY OF AMERICA et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Travelers' Motion for Reconsideration of Partial Summary Judgment Rulings on Redrill and P&A, filed July 18, 2014 (ECF No. 241). Having considered the motion, response, reply, summary judgment record, prior rulings, and applicable law, Travelers' motion is denied.

**I.     Relevant Background**

The Court assumes the parties' familiarity with the memorandum opinion and order dated July 14, 2014 (ECF No. 211), and only sets forth facts and procedural history pertinent to Travelers' motion. This is an insurance coverage dispute between policyholder plaintiffs and their insurer under a well-control policy following a September 22, 2011 well blowout in Reeves County, Texas. The lawsuit arises out of a claim under Control of Well Policy Number VI04200283 (the "policy") issued by Travelers Property Casualty Company of America ("Travelers") to Plaintiff Eagle Oil and Gas Company ("Eagle Oil"), the operator and a working-interest owner in the Monroe 39 #2H Well

1

(the "Well").  Plaintiffs Eagle Wolfbone Energy Partners, LP and Eagle Oil and Gas Partners, LLC were non-operating working-interest owners in the Well and were additional insureds under the policy.  Among other things, the policy provided protection to the insured against oil well blowouts, and reimbursement for costs and expenses reasonably incurred by the insured in bringing the well under control.  The policy also contained a due care and diligence clause requiring the insured to exercise due care and diligence in the conduct of all operations with respect to any insured well and to use all safety practices and equipment generally considered prudent for such operations.

On September 22, 2011, while Eagle Oil was attempting to open a stuck frac port sleeve by applying various levels of pressure, a 7-inch piece of casing ruptured downhole in the Well, causing the top casing joints and wellhead to be ejected into the air, and allowing a flow of gas and well fluids to the surface that could not be controlled.  The parties dispute whether the 7-inch casing broke apart because Eagle Oil exceeded the maximum allowable casing pressure for this operation. Wild Well Control was dispatched to the location and, following clean-up and snubbing, Plaintiffs later plugged and abandoned the Well, and ultimately redrilled the Monroe 39 #2R replacement well. Plaintiffs incurred costs and expenses: (1) in attempting to regain control of the Well, including plugging and abandonment ("P&A") costs; (2) in redrilling a replacement well; (3) in cleaning up pollution resulting from the blowout; and (4) in regard to oil field equipment owned by others that was damaged.  Plaintiffs gave proper notice and submitted their losses to Travelers for reimbursement under the policy.

On July 5, 2012, Travelers denied coverage stating, among other things, that Eagle Oil's engineering decision to exceed maximum safe fracturing pressure violated the due care and diligence clause in the policy.  Following coverage denial, Plaintiffs sued Travelers for: (1) breach of contract

2

for denial of claim coverage under the policy, (2) breach of the common law duty of good faith and fair dealing, (3) violations of sections 541 and 542 of the Texas Insurance Code, and (4) violations of section 17.46(b) of the Texas Deceptive Trade Practices Act ("DTPA") and resultant penalties. *See* Pl. Third Am. Compl. ¶¶ 29(a) - 31(b), ECF No. 68.

On April 14, 2014, Plaintiffs and Travelers each filed a motion for partial summary judgment. Among other things, Plaintiffs sought summary judgment on their breach of contract claims arising from Travelers' denial of coverage for P&A costs and costs to redrill the Monroe 39 #2R replacement well.[1] Travelers sought partial summary judgment as to Plaintiffs' extra-contractual claims, and also filed a cross-motion for summary judgment on the redrill claims. On July 14, 2014, the Court granted Plaintiffs' motion for partial summary judgment on the breach of contract claims based on Travelers' denial of coverage for costs of P&A and redrill, denied Travelers' cross-motion for summary judgment on the redrill claim, and granted Travelers' motion for partial summary judgment on Plaintiffs' extra-contractual claims.[2] *See* Mem. Op., ECF No. 211.[3]

---

[1]Plaintiffs also sought a summary judgment ruling that the due care and diligence clause was not a condition precedent to coverage (as Travelers asserted), but a covenant made to Travelers to act in a certain manner while conducting well-related activities. Plaintiffs further argued that compliance with that covenant was enforced by the policy's Common Condition 5.c, which excludes coverage for breach of the due care and diligence clause. The Court agreed with Plaintiffs and held that Travelers would have the burden of proving that Plaintiffs failed to exercise due care and diligence. The Court rejected Plaintiffs' motion, however, insofar as Plaintiffs sought to incorporate a "gross negligence" standard, extrinsic to the contract, to define the standard of care by which due diligence should be measured. These rulings have not been challenged.

[2]The Court dismissed with prejudice Plaintiffs' causes of action for breach of the common law duty of good faith and fair dealing, violations of section 541 of the Texas Insurance Code, and violations of section 17.46(b) of the Texas Deceptive Trade Practices Act, and request for punitive damages. This ruling has not been challenged.

[3]The Court also granted Plaintiffs' summary judgment motion with regard to certain affirmative defenses, and dismissed other affirmative defenses as moot or because Travelers had agreed to withdraw them. These rulings have not been challenged.

Travelers has filed a motion for reconsideration arguing that the policy does not cover Plaintiffs' P&A and redrill claims. The motion has been fully briefed and is ripe for determination.

## II.     Legal Standard

A request that the Court reconsider an interlocutory order is governed by Rule 54(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 54(b). "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court." *Dos Santos v. Bell Helicopter Textron, Inc. District*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009 ) (Means, J.). Such a motion requires the Court to determine "whether reconsideration is necessary under the circumstances." *Rotella v. Mid-Continent Casualty Co.*, 2010 WL 1330449, at *5 (N.D. Tex. Apr. 5, 2010) (Fish, J.) (quoting *Judicial Watch v. Department of the Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (citation and internal quotation marks omitted)). "Even though the standard for evaluating a motion to reconsider under Rule 54(b) 'would appear to be less exacting than that imposed by Rules 59 and 60 . . ., considerations similar to those under Rules 59 and 60 inform the Court's analysis.'" *Id.* (quoting *Dos Santos*, 651 F. Supp. 2d at 553). It is clear under Rules 59 and 60 that "[m]otions for reconsideration have a narrow purpose and are only appropriate to allow a party to correct a manifest error of law or fact or to present newly discovered evidence." *Arrista v. Yellow Transportation, Inc.*, 2009 WL 129731, at *1 (N.D. Tex. Jan. 20, 2009) (Fitzwater, C.J.) (citation and internal quotation marks omitted); *see also Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004) (citation omitted) (under Rule 59(e), relief may be granted "to correct manifest errors of law or fact or to present newly discovered evidence[]" and Rule 59(e) "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.").

4

## III.    Discussion

Travelers has filed a motion for reconsideration arguing that the policy does not cover Plaintiffs' P&A and redrill claims. Plaintiffs oppose the motion.  The Court first addresses the P&A claims.

### A.      P&A Claims

Travelers moves the Court to reconsider its decision granting Plaintiffs' motion for partial summary judgment on their breach of contract claim based on Travelers' denial of coverage for P&A costs.  The relevant portion of the policy provides as follows:

**SECTION IA – CONTROL OF WELL INSURANCE**

### 1.      COVERAGE

The Company agrees, subject to the Combined Single Limit of Insurance shown in Item 7.A. of the DECLARATIONS, and other terms and conditions of this Policy, to reimburse the Insured for *actual costs and expenses reasonably incurred* by the Insured:

a.      To regain or attempt to regain control of any "well insured" which becomes a Well Out Of Control as defined in Paragraph 2.a. below, including any other "well" that becomes a Well Out Of Control as a direct result of a "well insured" becoming a Well Out Of Control, but only such costs or expenses that are incurred until the "well" becomes a Well Brought Under Control as defined in Paragraph 2.b. below[]. . .

\* \* \*

### 2.      DEFINITIONS

### a.      Well Out Of Control

For purposes of this Policy, a "well" will be deemed to be a Well Out Of Control only when there is an unintended flow of drilling fluid, oil, gas or water above the surface of the ground, or water bottom in

5

case of a "well" located in water, which cannot be controlled by the blowout preventer, storm choke, "wellhead equipment" or other equipment [required in the policy], or when declared by the appropriate United States, Canada or other governmental regulatory authority.

* * *

**b.     Well Brought Under Control**

For the purposes of this Policy, a "well" deemed to be a Well Out Of Control in accordance with Paragraph 2.a. above will be deemed to be a Well Brought Under Control at the time that the flow giving rise to a claim under this SECTION IA stops, or is stopped and:

> (1) The drilling, deepening or "workover", or other similar operation taking place in the "well" immediately prior to the "occurrence" giving rise to such claim is resumed, or can be resumed;

> (2) The "well" is or can be returned to the same producing, shut-in or other similar status that existed immediately prior to the "occurrence" giving rise to such claim; or

> (3) When the "well" is permanently plugged and abandoned in accordance with procedures approved by the appropriate United States, Canada or other governmental regulatory authority;

> whichever comes first[.]

**c.     Costs or Expenses**

Costs or expenses covered under this Policy *includes* costs of materials and supplies required, *the services of individuals or firms specializing in controlling "wells" and directional drilling and similar operations necessary to bring the Well Out Of Control under control* including costs and expenses incurred at the direction of regulatory authorities to bring the Well Out Of Control under control, and other expenses included within Paragraph 1, of this Section 1A.

Policy Section IA.1(a) & IA.2(a)-2(c) (emphasis added).  Much of the parties' dispute centers on this

final subsection, Costs or Expenses.

6

In opposing Plaintiffs' motion for summary judgment on the P&A claim, Travelers initially argued:

> To recover well-control costs under Section IA of the policy, Plaintiffs must establish (1) that the well went out of control, per policy definition, requiring "unintended flow [] above the surface of the ground, [] which cannot be controlled by the blowout preventer [] or other equipment," (2) that they incurred actual costs and expenses to control the well before the well was "brought under control" as defined by the policy, and (3) that the costs and expenses were both "reasonably incurred" and "necessary to bring the well [] under control."

ECF No. 132, at 19-20.   Applying Texas law regarding insurance policy construction, the Court rejected Travelers' argument that coverage of P&A costs and expenses was only triggered if the insured could prove costs and expenses were "necessary to bring the well under control."   Mem. Op. at 25, ECF No. 11.   The Court agreed, however, that fact issues rendered summary judgment inappropriate on the question of whether Plaintiffs had demonstrated that costs and expenses for P&A were "reasonably incurred."   *See id.* at 27.   The Court arrived at its ruling based on a plain reading of the policy language:

> Unlike Section IA, subsection 1, Coverage, where "reasonably incurred," directly modifies reimbursable "costs and expenses," the clause "necessary to bring the Well Out of Control under control" is in a separate subsection of the policy, which provides a non-exclusive list of costs allowable.   *See* Policy, Section IA, subsection 2.c, Definitions.   Further, the clause "necessary to bring the Well Out of Control under control" modifies the word "operations," and not costs and expenses. In short, based on a reading of the plain language of the policy, the Court concludes that nothing in Section IA expressly states or implies that costs shall only be reimbursed if the insured can prove the costs were "necessary to bring the well under control[.]"

In its motion to reconsider, Travelers argues that the definition of costs and expenses should be interpreted as requiring that for a cost to be covered, "it must be for an operation necessary to

bring the well under control."   Brief in Supp. of Mot. to Reconsider at 12, ECF No. 242.

Specifically, Travelers states:

> Paragraph 2.c under the "Definitions" section describes the covered costs and expenses for controlling a well as "costs of materials and supplies required,[] and [] *operations necessary to bring the Well Out of Control under control.*

*Id.* (Travelers' emphasis).  In response, Plaintiffs first note that Travelers "presents no new evidence that would cause the Court to rethink its plain reading of the policy."  Pl. Response Brief at 12-13, ECF No. 252.  Plaintiffs further argue that:

> This Policy covers the cost of a firm's services, such as Wild Well Control, in controlling wells; those services include directional drilling and similar operations necessary to bring the well under control.   These costs are only limited by the "actual costs and expenses reasonably incurred" language of Section IA, 1, Coverage.  Any contrary reading ignores the plain language of the Policy.

*Id.* at 13.  The Court agrees.

It is  a basic rule of grammar that"modifiers should come, if possible, next to the words they modify." William Strunk, Jr., & E.B. White, The Elements of Style 30 (4th ed. 2000).  Here, as the Court previously noted, the correct grammatical reading is that "necessary" modifies the phrase immediately preceding it.  Travelers  omits a crucial portion of the phrase immediately preceding "necessary," namely, "*the services of individuals or firms specializing in controlling 'wells' and directional drilling and similar operations* necessary to bring the Well Out Of Control under control[.]"  "Necessary," when read in relation to what it modifies, is a descriptor of the type of services that firms specializing in well control provide, not a requirement for P&A coverage.

Further, that subsection 2.c, Definitions, is a non-exhaustive list describing the type of costs and expenses covered under the policy, and not a coverage grant or limitation on coverage, is

8

supported by the definition of "include" in Black's Law Dictionary: "To contain as part of something. The participle *including* typically indicates a partial list[.]" *See* Black's Law Dictionary 880 (10th ed. 2014); *see also* Merriam-Webster's Collegiate Dictionary 629-30 (11th ed. 2014) ("'Include' suggests the containment of something as a constituent, component, or subordinate part of a larger whole[.]"). Travelers' interpretation is also inconsistent with the catch-all provision at the end of subsection 2.c, which provides that "costs or expenses include" "other expenses included within Paragraph 1 of this Section 1A."

In sum, based on a plain reading of the policy language, and applying general rules of grammar, the Court denies Travelers' motion to reconsider the Court's prior ruling granting summary judgment in Plaintiffs' favor on its breach of contract claim based on Travelers' denial of coverage on P&A costs.[4]

### B.      Redrill Claims

Travelers also moves the Court to reconsider its ruling on the parties' cross-motions for summary judgment on redrill coverage, where the Court granted Plaintiffs' motion and denied Travelers' motion. Plaintiffs oppose the motion for reconsideration on redrill coverage. The relevant portion of the policy provides as follows:

**SECTION IB – REDRILL/EXTRA EXPENSE**

### 1.      COVERAGE

> The Company agrees, subject to the Combined Single Limit of Insurance shown in Item 7.A. of the DECLARATIONS, and other terms and conditions of this Policy, to reimburse the Insured for actual costs and expenses

---

[4]The Court notes that it also found that whether the P&A costs were reasonably incurred was a fact issue for the jury, as the Court had insufficient evidence in the summary judgment record to determine reasonableness. This ruling has not been challenged. *See* Mem. Op. at 27, ECF No. 211.

> reasonably incurred by the Insured to restore or redrill a "well", or any part
> of such "well", *which has been lost or otherwise damaged as a result of a*
> *"crater" or other "occurrence" that gives rise to a claim which would be*
> *recoverable under SECTION IA of this Policy….*

Policy Section IB.1(emphasis added).   Much of the parties' dispute concerns the meaning of

"occurrence," which the policy defines as follows:

> "Occurrence" means one accident, loss, disaster or casualty or series of accidents, losses,
> disasters or casualties arising out of one event.
>
> a.    With respect to windstorms, all tornadoes, cyclones, hurricanes, similar storms and
>       systems of winds of a violent or destructive nature arising out of the same
>       atmospheric disturbance occurring within any period of 72 consecutive hours will be
>       deemed to be one event.
>
> b.    With respect to earthquake shocks or volcanic eruptions, all earthquake shocks or
>       volcanic eruptions occurring within any period of 72 consecutive hours will be
>       deemed to be one event.

Policy, Section I, Definitions.

In support of its motion for reconsideration, Travelers once again argues that the

"occurrence" under the policy is the well out of control, not the casing failure, that the policy is a

named-perils policy, and that the Court's interpretation of the policy contravenes "industry"

interpretation of well control policy coverage. *See* Brief in Supp. of Mot. to Reconsider at 1-11, ECF

No. 242.  In opposition, Plaintiffs argue that "Travelers' motion does not add any new evidence and

simply rehashes arguments it made or could have made in its three previous filings on this issue."

Pl. Resp. Brief at 5, ECF No. 252.  The Court agrees.

In initial summary judgment briefing, Plaintiffs argued that Section IB covers costs of

redrilling a well lost or damaged as a result of an "occurrence" leading up to the uncontrolled flow.

Plaintiffs further argued that the "occurrence" in this case is the failure of the 7-inch casing in the

Well, which ultimately caused the loss of the Well.  In support of its cross-motion for summary judgment on redrill coverage, Travelers argued it was entitled to summary judgment because redrill coverage does not apply unless the well was lost or damaged as a result of unintended and uncontrolled flow.  In denying Travelers' cross-motion for summary judgment on redrill coverage, the Court concluded:

> Based on a plain reading of the policy language, the Court rejects Travelers' argument that the policy only pays to redrill a well lost or damaged as a result of uncontrolled flow, rather than lost due to pressure operations.  The policy clearly covers costs or expenses to redrill a well which has been lost as a result of an "occurrence" (defined as an accident, loss, disaster or casualty, or series of such arising out of one event, including but not limited to windstorms, tornados, and earthquakes) that gives rise to a claim that would be recoverable under Section IA. In this case, the "occurrence" is the casing failure.  Travelers' interpretation skips over the word "occurrence," or interprets "well out of control" as synonymous with "occurrence," even though each is already a defined term.  Additionally, the case law upon which Travelers relies is not persuasive, as the cases contain different redrill coverages than Section IB of Travelers' policy and do not include a broad definition of "occurrence."

Mem. Op. at 29, ECF No.211.

Having carefully considered Travelers' motion to reconsider and the cases and authorities upon which it relies, the Court concludes that reconsideration of its ruling on redrill coverage is not warranted.  Travelers has not shown a manifest error or presented newly discovered evidence supporting its interpretation of the policy's relevant terms.  Travelers' brief supporting reconsideration is replete with arguments previously made in its earlier opposition to Plaintiffs' motion for partial summary judgment, and in support of its own cross-motion for summary judgment. The Court already decided this issue in its July 14, 2014 memorandum opinion and order where it carefully considered the parties' respective arguments and the extensive record presented on summary judgment, as well as applicable law.  The Court set forth its reasoning in its

memorandum opinion and order, and the Court is satisfied that it correctly denied Travelers' cross-motion for summary judgment on Plaintiffs' redrill claims.  No argument advanced by Travelers in its motion to reconsider persuades the Court that its prior decision is incorrect.  In addition, a review of the Court's reasoning in its memorandum opinion and order shows the Court did not commit a manifest error of law in rejecting Travelers' position, but applied well-established rules governing construction of insurance contracts.

Accordingly, the Court denies Travelers' motion to reconsider the Court's ruling on redrill coverage.

## IV.    Conclusion

Based on the forgoing, the Court **denies** Travelers' Motion for Reconsideration of Partial Summary Judgment Rulings on Redrill and P&A.

**SO ORDERED** this **29th day** of **July, 2014.**

Reed O'Connor
UNITED STATES DISTRICT JUDGE

12