**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **EAGLE OIL & GAS CO. et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:12-cv-00133-O** |
| | § | |
| **TRAVELERS PROPERTY CASUALTY** | § | |
| **COMPANY OF AMERICA et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Eagle Oil & Gas Co. ("Eagle Oil"), Eagle Wolfbone Energy Partners, LP ("Eagle Wolfbone"), and Eagle Oil & Gas Partners, LLC ("Eagle Partners") (collectively, "Plaintiffs") and Defendant Travelers Property Casualty Company of America ("Travelers") have filed motions to exclude the testimony and strike the reports of each other's experts in this insurance coverage dispute.  Having considered the motions, responses, replies,[1] applicable law, and for the reasons stated herein, the Court **denies in part and grants in part** Plaintiffs' Motion to Strike and Exclude Judd Hansen's Reports and Testimony (ECF No. 157); **grants** Plaintiffs' Motion to Strike and Exclude Greg Sones's Reports and Testimony (ECF No. 164); **denies** Defendants' Motion to Strike Untimely Supplemental Report and Exclude Defective Casing Opinion of Plaintiffs' Expert Edward Ziegler (ECF No. 165); **denies** Defendants' Motion to Exclude Non-Metallurgy Opinions of Plaintiffs' Expert John Slater (ECF No. 170); and **denies in part and grants in part** Defendants'

---

[1]Travelers did not file a reply brief in further support of its *Daubert* motions to strike Plaintiffs' experts John Tintera and John Slater.

1

Motion to Exclude Opinions of Plaintiffs' Expert John Tintera, filed June 23, 2014 (ECF No. 172).[2]

## I.    Background

This is an insurance coverage dispute between policyholder plaintiffs and their insurer under a well-control policy following a September 22, 2011 well blowout in Reeves County, Texas. The lawsuit arises out of a claim under Control of Well Policy Number VI04200283 (the "policy") issued by Travelers to Plaintiff Eagle Oil, the operator and a working-interest owner in the Monroe 39 #2H Well (the "Well"). Plaintiffs Eagle Wolfbone and Eagle Partners were non-operating working-interest owners in the Well and were additional insureds under the policy. Among other things, the policy provided protection to the insured against oil well blowouts, and reimbursement for costs and expenses reasonably incurred by the insured in bringing the well under control. The policy also contained a due care and diligence clause requiring the insured to exercise due care and diligence in the conduct of all operations with respect to any insured well and to use all safety practices and equipment generally considered prudent for such operations.

On September 22, 2011, while Eagle Oil was attempting to open a stuck frac port sleeve by applying various levels of pressure, a 7-inch piece of casing ruptured downhole in the Well, causing the top casing joints and wellhead to be ejected into the air, and allowing a flow of gas and well fluids to the surface that could not be controlled. The parties dispute whether the 7-inch casing broke apart because Eagle Oil exceeded the maximum allowable casing pressure for this operation. Following clean-up and snubbing, Plaintiffs later plugged and abandoned the Well, and ultimately

---

[2]The parties have stipulated that Defendants' Motion to Strike and Exclude Opinions of Plaintiffs' Expert John Meloy (ECF No. 160) and Defendants' Motion to Strike Untimely Supplemental Report and Exclude Bad Faith Damages Calculation Opinion of Plaintiffs' Expert Tim Smith  (ECF No. 168) are moot in light of the Court's July 15, 2014 Memorandum Opinion and Order.  *See* Joint Report on Mootness of Certain Expert Challenges, ECF No. 240.

redrilled the Monroe 39 #2R replacement well.  Plaintiffs incurred costs and expenses: (1) in attempting to regain control of the Well, including plugging and abandonment ("P&A") costs; (2) in redrilling a replacement well; (3) in cleaning up pollution resulting from the blowout; and (4) in regard to oil field equipment owned by others that was damaged.  Plaintiffs gave proper notice and submitted their losses to Travelers for reimbursement under the policy.

On July 5, 2012, Travelers denied coverage stating, among other things, that Eagle Oil's engineering decision to exceed maximum safe fracturing pressure violated the due care and diligence clause in the policy.  Following coverage denial, Plaintiffs sued Travelers for: (1) breach of contract for denial of claim coverage under the policy, (2) breach of the common law duty of good faith and fair dealing, (3) violations of sections 541 and 542 of the Texas Insurance Code, and (4) violations of section 17.46(b) of the Texas Deceptive Trade Practices Act ("DTPA") and resultant penalties. *See* Pl. Third Am. Compl. ¶¶ 29(a) - 31(b), ECF No. 68.

Following the Court's July 14, 2014 ruling on the parties' respective motions for partial summary judgment (*see* ECF No. 211), and subsequent stipulations by the parties (*see* ECF No. 233), the remaining issue for trial is whether Eagle Oil acted as a reasonable prudent operator in attempting to open the stuck frac port.  Travelers will have the burden of proving that Eagle Oil failed to act as a reasonable prudent operator, invalidating coverage under the due care and diligence clause of the policy.  This case is set for a jury trial beginning August 5, 2014.

Plaintiffs now move to exclude the testimony and strike the expert reports of: (1) Judd Hansen, a petroleum expert in the oil and gas industry who will testify on behalf of Travelers that Eagle Oil's decision to exceed the published burst pressure for the 7-inch casing was not reasonable under industry standards, and also that Eagle Oil should have even further reduced the maximum

pressure because of the possible wear on the casing and unknowns about the presence of fluid in the annulus; and (2) Greg Sones, a petroleum engineer, who, like Hansen, will testify for Travelers that Eagle Oil did not use due care or employ the safety practices generally considered prudent for limiting pressure used in oil and gas wells.

Travelers moves to exclude the testimony and strike the expert reports of: (1) Edward Ziegler, a petroleum engineer who will testify for Plaintiffs that the 7-inch casing was defective because it failed at lower pressures than it should have; (2) John Slater, a metallurgist who will testify for Plaintiffs that the casing should not have failed at the pressures exerted; and (3) John Tintera, the Executive Director of the Texas Railroad Commission at the time of the blowout and a licensed geologist, who will testify for Plaintiffs concerning how Railroad Commission rules operate regarding the pressures operators are allowed to use and as applied to the facts and circumstances of this case.  The motions have been fully briefed and are ripe for determination.

## II.     Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).  This rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.  Effective December 1, 2000, Rule 702 was amended to incorporate the principles first articulated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  *See* FED. R. EVID. 702, adv. comm. notes (2000).  Under *Daubert*, expert

testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable.  *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).   The trial court is charged with making this preliminary determination under Fed. R. Evid. 104(a).[3]  *Andrade Garcia v. Columbia Medical Center of Sherman*, 996 F.Supp. 617, 620 (E.D. Tex. 1998);  *see also* FED. R. EVID. 702, adv. comm. notes (2000).

*Daubert* lists five non-exclusive factors to consider when assessing the scientific validity or reliability of expert testimony:

1.      Whether the theory or technique has been tested;

2.      Whether the theory or technique has been subjected to peer review and publication;

3.      The known or potential rate of error of the method used;

4.      The existence and maintenance of standards and controls in the methodology; and

5.       Whether the theory or method has been generally accepted by the scientific community.

*Daubert*, 509 U.S. at 593-95.  These factors are not necessarily limited to scientific evidence and may be applicable to testimony offered by non-scientific experts, depending upon "the particular circumstances of the particular case at issue."  *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).  In either case, the *Daubert* analysis focuses on the reasoning or methodology

---

[3]  Fed. R. Evid. 104(a) provides:

Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b).  In making its determination it is not bound by the rules of evidence except those with respect to privileges.

employed by the expert, not the ultimate conclusion. *Watkins*, 121 F.3d at 989. The purpose of such an inquiry is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir. 1999) (quoting *Kumho Tire*, 526 U.S. at 152). Thus, the court "must review only the reasonableness of the expert's use of such an approach, together with his particular method of analyzing the data so obtained, to draw a conclusion regarding the specific matter to which the expert testimony is directly relevant." *American Tourmaline Fields v. International Paper Co.*, 1999 WL 242690 at *2 (N.D. Tex. Apr. 19, 1999) (citing *Kumho Tire*, 526 U.S. at 154).

The test of reliability is necessarily a flexible one. As the Supreme Court has recognized, the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150; *see also Watkins*, 121 F.3d at 988-89 ("Not every guidepost outlined in *Daubert* will necessarily apply to expert testimony[.]"). A trial court has wide latitude in deciding how to determine reliability, just as it has considerable discretion with respect to the ultimate reliability determination. *Kumho Tire*, 526 U.S. at 152. Moreover, "the rejection of expert testimony is the exception rather than the rule." *See* FED. R. EVID. 702, adv. comm. notes (2000). *Daubert* did not work a seachange over federal evidence law, and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *See id.* (quoting *United States v. 14.38 Acres of Land, More or Less, Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)). Even after *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

6

evidence." *Daubert*, 509 U.S. at 596; *see also In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994) ("The grounds for the expert's opinion merely have to be good, they do not have to be perfect.").

## III.   Analysis

### A.   Travelers' Experts

Travelers offers the testimony of two experts — Judd Hansen and Greg Sones — to support its position that Eagle Oil violated the due care and diligence clause in the policy by, among other things, electing to exert repeated pressure excursions in excess of the designed pressure tolerances on the 7-inch casing, thereby causing the casing failure and the ensuing blowout.  Plaintiffs contend neither of these experts is qualified and/or that their opinions are neither relevant nor reliable.  With regard to Greg Sones, Plaintiffs additionally argue that his testimony must be excluded because Travelers failed to file a written report required under FED. R. CIV. P. 26(a)(2)(B) for retained experts.  Judged against the standards of FED. R. EVID. 702 and Supreme Court precedent, for the reasons that follow, the Court determines that Hansen's testimony should be excluded only insofar as he intends to testify about, or rely upon, Railroad Commission regulations which did not take effect until January 1, 2014.  Sones's testimony should be excluded for failure to provide a written report required by FED. R. CIV. P. 26(a)(2)(B).

### 1.   Judd Hansen

Travelers engaged Hansen as an expert to determine if Eagle Oil exercised due care and diligence in its operations.  *See* App. to Travelers' Response to Pl. Mot. to Strike and Exclude Reports and Testimony of Hansen at 2, Hansen Report, ECF No. 224-1.  Hansen authored an October 15, 2012 report and a November 15, 2012 supplemental report.  *Id.* at 1-8, Hansen Report;

7

*id.* at 9-29, Hansen Supplemental Report.  Hansen was deposed on March 17, 2014.  *Id.* at 30-109, Hansen Dep. Transcript.  Hansen is a petroleum engineer who graduated magna cum laude with a Bachelor of Science degree in mechanical engineering from South Dakota School of Mines & Technology in 1978, and who has over thirty-five years of experience in the oil and gas industry. *Id.* at 1, Hansen Report.  Hansen has participated in designing, drilling and completing wells, including hydraulic fracture wells in the Permian basin.  *Id.* at 1, Hansen Report;  *id.* at 9, Hansen Supplemental Report.  Hansen's central opinion is that no reasonable operator would have exceeded a minimum safety factor of 10% below the published burst pressure for the 7-inch casing and that Eagle Oil should have even further reduced the maximum pressure because of the possible wear on the casing and unknowns about the presence of fluid in the annulus.  *Id.* at 1-8, Hansen Report; *id.* at 9-29, Hansen Supplemental Report.  Hansen also opines concerning industry safety factors, gas in the annulus, wear caused by rotational drilling, higher burst rates in high collapse casing, and considerations concerning casing couplings.  Hansen used a caliper log to conclude that the casing was worn and looked to industry standards to determine that a safety factor was exceeded.  *Id.* at 35, Hansen Dep. Transcript at 20:10-18, 20:22-24.  Hansen testifies that he is "intimately familiar with the engineering standards in the oil and gas industry, and with standards applied in the area where this well was drilled."  *Id.* at 1, Hansen Report; *id.* at 9, Hansen Supplemental Report.  As to the methodology used, Hansen states in his initial and supplemental report:

> My methodology was to review the documents and testimony, apply sound engineering principles and calculations, [and] apply industry-standard safety factors as set forth in American Petroleum Institute (API) publications, to determine the cause of the incident.  I relied upon my experience in oil and gas operations, which includes engineering design, field supervision, office supervision and executive management; my knowledge of industry accepted safety practices; and my knowledge of and experience with the Texas Railroad Commission rules and regulations.  All

8

of my opinions and conclusions are made within a reasonable degree of engineering certainty, based on industry standards and my experience.

*Id.* at 1, Hansen Report; *id.* at 9-10, Hansen Supplemental Report.

Plaintiffs do not challenge Hansen's expertise in the field of oil and gas, but instead argue the Court should strike Hansen's reports and exclude his testimony in advance of trial since "Hansen admits he is not an expert in certain fields on which he bases some of his opinions, and because he fails to properly support any of his opinions with authority from the oil and gas industry." *See* Brief in Supp. of Pl. Mot. to Strike and Exclude Reports and Testimony of Hansen at 2, ECF No 158. According to Plaintiffs, Hansen has admitted he is not an expert in the "fields" of American Petroleum Institute ("API") documents, casing caliper logs, materials sciences, and Texas Railroad Commission regulations. *See id.* at 2-5.[4] Plaintiffs also argue that the Court should strike Hansen's reports and exclude his testimony from the record and upcoming trial "because they are not reliable and will not assist the jury in any way." *See id.* at 2. Specifically, Plaintiffs challenge the reliability of Hansen's opinions concerning industry safety factors, gas in the annulus, wear caused by rotational drilling, higher burst rates in high collapse casing, and considerations concerning casing couplings.

Travelers counters that Hansen's background and experience in the oil and gas industry uniquely qualify him to opine regarding what a reasonable prudent operator would do under the

---

[4]Plaintiffs also argue that Hansen is not an expert on insurance policy interpretation and should not be permitted to opine regarding his interpretation of the policy. The Court has interpreted the policy as a matter of law, rendering this argument moot. *See* ECF No. 211. Further, Plaintiffs' arguments in support of striking and excluding Hansen's opinions regarding the first and second P&A operations, and whether Plaintiffs followed Railroad Commission rules and regulations relating to P&A, have been rendered moot by the Court's July 14, 2014 decision concluding that, based on a plain reading of the unambiguous policy language, Plaintiffs' P&A costs were covered under the policy. *See id.*

circumstances presented.  Travelers further contends that "Plaintiffs' *Daubert* motion is little more

than Plaintiffs' disagreement with Hansen's views, which is proper cross-examination, but not a

basis to exclude his opinions or testimony."  Brief in Supp. of Travelers' Response to Pl. Mot. to

Strike and Exclude Reports and Testimony of Hansen at 1, ECF No. 224.  With regard to Plaintiffs'

argument that Hansen should not be permitted to testify regarding fields in which he is not an expert,

including caliper casing logs,  material science, API documents, and TRC regulations, Travelers

posits that:

> Plaintiffs are simply wrong in asserting that Hansen lacks the necessary expertise in
> the "fields" of [API] documents, casing caliper logs, materials sciences, and [TRC]
> regulations — Hansen's expertise is petroleum engineering which requires him to
> understand how each of these other areas relates to and informs his judgment as a
> petroleum engineer.  Hansen has that expertise, and his description of the errors
> Eagle made in this case will assist the jury in determining whether Eagle acted as a
> reasonable prudent operator.

*See id.*

Applying the standards of Fed. R. Evid. 702 and Supreme Court precedent, the Court agrees

with Travelers that Hansen, by education, training, and experience designing, drilling and completing

wells, including hydraulic fracture wells in the relevant geographical area, possesses the necessary

expertise to explain to a jury the relevant considerations for an oil and gas operation to determine

an appropriate pressure limitation to apply during well drilling operations.  Further, Hansen's

opinions are reasonably based on established petroleum engineering standards, industry publication

and practices, applicable regulations, his over thirty years of  experience in the industry, and the

operating records at the Well.  *See* App. to Travelers' Response to Pl. Mot. to Strike and Exclude

Reports and Testimony of Hansen at 1-8, Hansen Report; *id.* at 9-29, Hansen Supplemental Report;

*id.* at 102, Hansen Dep. Transcript at 288:23 – 289:11.  *See generally Kuhmo Tire*, *supra*

10

(recognizing appropriateness of expert drawing a conclusion from observation based on extensive and specialized experience).  In sum, Hansen's opinions concerning industry safety factors, gas in the annulus, wear caused by rotational drilling, higher burst rates in high collapse casing, and considerations concerning casing couplings are sufficiently reliable and relevant to survive Plaintiffs' *Daubert* challenge.

Plaintiffs' motion is granted, however, insofar as excluding any testimony by Hansen regarding industry safety standards based on TRC regulations that did not go into effect until January 1, 2014.  The blowout occurred on September 22, 2011.  As Plaintiffs correctly argue, the January 1, 2014 regulations are therefore irrelevant to the standards applicable to Texas well operators in 2011.  Further, even if Travelers is correct that the new regulations are merely codifications of pre-exiting industry standards, the Court concludes that the potential prejudice and jury confusion of allowing this testimony would outweigh any probative value.  *See* FED. R. EVID. 403.  Nothing prevents Travelers from presenting the jury with expert testimony regarding TRC regulations in effect at the time of the blowout.  Plaintiffs' motion is denied in all other part.

### 2. Greg Sones

Plaintiffs seek to exclude the testimony of Sones because he is a retained expert under FED. R. CIV. P. 26(a)(2)(B) and has failed to submit a written report and, alternatively, because his testimony is unsupported and unreliable.  *See* Brief in Supp. of Pl. Mot. to Strike and Exclude Sones' Testimony at 1-17, ECF No. 161.  Citing FED. R. CIV. P. 26(a)(2)(C), Travelers counters that Sones did not need to file a written expert report since he was not specifically retained or specially employed by Travelers to testify at trial.  Travelers also argues that even were Sones required to file

11

a written report, such failure was harmless because Plaintiffs explored the bases for Sones's opinions during deposition. *Id.* at 5-6.

"Courts require a party seeking to avoid producing a full expert report to show the proposed expert is not required to submit a report." *Skyward Bound Ranch v. City of San Antonio*, 2011 WL 2162719, at *2 (W.D. Tex. June 1, 2011). *See also Meredith v. Int'l Marine Underwriters*, 2011 WL 1466436, at *4 (D. Md. Apr. 18, 2011) ("A party seeking to avoid producing an expert report bears the burden of demonstrating that the witness is a hybrid.").

As the proponent of the witness, Travelers has the burden to show Sones is not required to submit an expert report under Rule 26(a)(2)(B). For the following reasons, the Court finds that Travelers has failed to meet its burden.

Expert testimony must be relevant and reliable, and disclosures provided in accordance with the Federal Rules of Civil Procedure. A party offering evidence who fails to provide information or identify witnesses in the manner required in the rules may not use the information at trial and the testimony must be excluded. *See* FED. R. CIV. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless.").

Rule 26(a)(2)(A) provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." FED. R. CIV. P. 26. Rule 26(a)(2)(B) states that "this disclosure shall . . . be

accompanied by a written report prepared and signed by the witness." *Id.*[5]   Under the 2010 amendments to Rule 26, expert witnesses not specially employed or retained and who do not regularly give expert testimony must only provide (1) the subject matter of their testimony and (2) a summary of the facts and opinions to which they will testify.  FED. R. CIV. P. 26(a)(2)(C).  The information required under Rule 26(a)(2)(C) is less extensive than an expert report under Rule 26(a)(2)(B).  "The delineation between a 26(a)(2)(B) expert and a 26(a)(2)(C) expert is whether the expert has 'first-hand factual knowledge of [the] case so as to escape the requirement that he submit a full expert report.'" *Beane v. Utility Trailer Manufacturing Co.*, 2013 WL 1344763, at *3 (W.D. La. Feb. 25, 2103) (quoting *Skyeward Bound Ranch*, 2011 WL 2162719, at *2).  *See also Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011) (holding that Rule 26(a)(2)(B)'s designation of an expert who was "retained or specially employed" turned on "the difference between a percipient witness who happens to be an expert and an expert who without prior knowledge of the facts giving rise to litigation is recruited to provided expert testimony.").  The advisory committee notes suggest Rule 26(a)(2)(C) applies to treating physicians or other healthcare professionals and employees of a party who do not regularly provide expert testimony.  *See* FED. R. Civ. P. 26, adv. comm. notes (2010).  "Requiring less of an expert who is not retained or specially employed is logical because the type of witness usually has firsthand knowledge[.]"  *Skyeward Bound Ranch*, 2011 WL 2162719, at *2.

---

[5]The written report must include: (1) a statement of all opinions the witness will express; (2) facts and data considered by them; (3) exhibits; (4) the witness's qualifications; (5) a list of cases in which the witnesses testified as an expert in the past four years; and (6) a statement of the compensation to be paid. FED. R. CIV. P. 26(a)(2)(B).

Travelers retained Sones in March 2012, five and a half months *after* the well blowout, for an "engineering and operations review and evaluation of [the Well's] failure."  App. to Brief in Supp. of Pl. Mot. to Strike and Exclude Sones' Testimony at 4, Sones Dep. Transcript at 13:16-14:9 (Sept. 19, 2012).  Travelers had no direct contact with Sones and his opinions were filtered though Travelers' counsel, Hall Maines Lugrin, PC.  *Id.* at 123, Travelers Supp. Ans. to Pl.'s Interrogatories at 3.  After conducting his operations and engineering review, Sones concluded that Eagle Oil exceeded industry-standard maximum pressure allowances for casing, and Eagle Oil's own maximum pressure tolerance for the Well, and failed to follow prudent engineering practices.  Relying on Sones's opinions, Travelers issued a denial of coverage letter on July 5, 2012.  *See* Travelers Summ. Judg. App. at 228-30, Denial of Coverage Letter, ECF No. 117 .

Travelers' amended initial disclosures list Sones as "an independent technical consultant to [Travelers] regarding its investigation of the events at the Monroe 26 #2H well that forms the basis of Plaintiffs' claim."  *See id.* at 132, Travelers' Amended Initial Disclosure at 4.  Travelers' Responsive Designation of Experts lists Sones as a "Non-Retained Expert."  *See id.* at 152-53.  Travelers' designation states that:

> Sones is expected to provide expert opinion testimony regarding the nature of the incident alleged by Plaintiff.  He is also expected to provide expert opinion testimony that the well was damaged as a result of the parted casing, and not the uncontrolled flow.  Finally, Mr. Sones is expected to provide expert opinion testimony that the well did not have to be plugged and abandoned because of the uncontrolled flow.

*See id.*  In further opposition to Plaintiffs' motion to strike Sones, Travelers asserts that "Sones's expert opinion forms the factual basis of Travelers' decision to deny coverage, and the jury is entitled to hear from Sones regarding how and why he reached his conclusion that Eagle was not a

14

reasonable and prudent operator." *See* Travelers' Resp. to Pl. Mot. to Strike and Exclude Sones' Testimony at 1, ECF No. 223.

On this record, the Court agrees with Plaintiffs that Travelers has failed to meet its burden of showing that Sones is not a retained expert. Sones is not a healthcare professional or a Travelers' employee. Travelers has not established that Sones had first-hand knowledge, or was a percipient witness, of the September 21, 2011 well blowout so as to escape the requirement that he submit a full expert report. It is undisputed that Travelers did not retain Sones until March 2012, five and a half months *after* the well blowout. While Travelers is correct that Sones may have first-hand knowledge of the reasons Travelers denied coverage in its July 5, 2012 letter, this testimony is not relevant to any remaining issues to be tried. In its decision resolving the parties' motions for partial summary judgment, the Court granted Travelers' motion for summary judgment on Plaintiffs' extra-contractual claims for bad faith denial of coverage, and dismissed these claims with prejudice. *See* ECF No. 211. Accordingly, the basis for Travelers' denial of coverage and inquiries into whether reliance on Sones's opinions was reasonable is no longer an issue in the case. Further, Travelers has failed to show that Sones's failure to submit a written report was harmless or substantially justified. Plaintiffs should not be charged with wading through deposition testimony to glean all the information required in Rule 26(a)(2)(B). Accordingly, the Court grants Plaintiffs' motion. Sones will not be permitted to testify at trial.

As an additional and independent ground for not allowing Sones's testimony, the Court finds that much of Sones's proposed trial testimony (that the well did not have to be plugged and abandoned due to uncontrolled flow, and that the well damage resulted from a parted casing and not uncontrolled flow) is moot in light of the Court's July 14, 2014 ruling on the parties' cross-motions

for summary judgment.  *See* ECF No. 211.  Further, Sones's testimony regarding whether Eagle Oil acted as a reasonable prudent operator largely duplicates Hansen's testimony, which the Court has found admissible.  As such, the Court will exclude Sones's testimony as cumulative and redundant under FED. R. EVID. 403.

### B.       Plaintiffs' Experts

Plaintiffs offer the testimony of three experts—Edward Ziegler, John Slater and John Tintera — to support their position that they did not act in a manner that violated the due care and diligence clause in the policy.  Travelers has moved to strike and exclude their testimony under FED. R. EVID. 702 and *Daubert*.

### 1.       Edward Ziegler

Edward Ziegler is a retained petroleum engineering expert who will testify for Plaintiffs that the 7-inch high-collapse casing in the Monroe 39# 2H well was defective because it failed at lower pressures than it should have.  *See* Ziegler Report at 43, ¶ 3.22, ECF No. 91-1.  Ziegler earned a Bachelor of Science degree in Petroleum and Natural Gas Engineering from Pennsylvania State University in 1972, and a J.D. from South Texas College of Law in 1979.  *Id.* at 4.  He has over forty years of experience in the oil and gas industry.  *Id.*  Ziegler currently owns and operates two independent oil and gas companies where he is the owner and operator of drilling rigs and related equipment.  *Id.*

Travelers seeks to exclude Ziegler's opinions and to strike Ziegler's March 6, 2014 First Supplemental Report as untimely.  Brief in Supp. of Travelers' Mot. to Strike Suppl. Report and Exclude Defective Casing Opinion of Edward Ziegler, ECF No. 166.  Travelers argues that Ziegler's

opinion is unreliable since no one, including Ziegler, knows for certain why the casing failed. *Id.*

at 3-6. In opposition, Plaintiffs contend:

> Travelers' argument that Ziegler "concedes he does not know how the casing failed"
> and thus his opinion that the casing failed due to a defect must be struck is pointless
> circular logic: no one *knows* how the casing failed so no one may offer an *opinion* on
> why it failed. Tracking their own reasoning, Travelers would not be able to offer any
> opinion that the casing failed due to over-pressurization because "nobody knows"
> how the casing failed.

Brief in Supp. of Pl. Resp. to Travelers' Mot. to Strike Suppl. Report and Exclude Defective Casing

Opinion of Edward Ziegler at 3-4, ECF No. 216. The Court agrees. "[I]t would be unreasonable to

conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are

no certainties in science . . . Proposed testimony must be supported by appropriate validation, i.e.

'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. Under these parameters, the

Court finds that Ziegler's education, training, experience, and research allow him to reliably render

an opinion that casing should not completely fail at pressures lower than its yield/deformation rating,

and is defective if it does so.

Travelers also argues that Ziegler is not a metallurgist and thus should not be allowed to offer

his opinion that the casing failed due to a defect. Brief in Supp. of Travelers' Mot. to Strike Suppl.

Report and Exclude Defective Casing Opinion of Edward Ziegler Ziegler at 7-9. As evidence that

Ziegler should not be permitted to offer his own opinions on why the uninspected downhole casing

failed, Travelers cites the testimony and reports of the parties' metallurgical experts who stated that

a piece of casing they inspected did not contain a defect, as well as testimony that neither expert

would comment on potential defects in casing they have not examined. The Court rejects Travelers'

argument. Any differing commentary between Ziegler and the metallurgists goes to the substance

of Ziegler's opinions, rather than any methodologies or reasoning used to reach them, and is thus not appropriately raised as a *Daubert* challenge. *See Watkins*, 121 F.3d at 989.

In short, the Court agrees with Plaintiffs that Ziegler does not have to be an expert in metallurgical studies to offer the opinion that a piece of oil and gas equipment is defective if it fails below its specifications. *See St. Martin v. Mobil Exploration & Producing U.S. Inc.*, 224 F.3d 402, 405-06 (5th Cir. 2000) (expert did not need to be a qualified hydrologist to testify whether canal water intrusion occurred at sufficient levels to erode vegetation, the expert had expertise in marshland ecology and personally observed the vegetation at issue.). Ziegler's extensive experience in the oil and gas industry and educational credentials allow him to comment on potential causes of oil-field equipment that fails below its published specifications.[6]

Finally, the Court concludes that Ziegler's March 6, 2014 First Supplemental Report was timely filed under the Court's scheduling deadlines and under FED. R. CIV. P. 26(e)(2). Even were it not timely, Travelers took Ziegler's deposition on March 13, 2014 and had the opportunity, and did, question Ziegler about his supplemental report. Untimeliness, if any, was therefore not prejudicial.

The Court denies Travelers' motion to strike the supplemental report and exclude the defective casing opinion of Edward Ziegler.

---

[6]Other than noting that Ziegler is not a metallurgist, Travelers cites no argument or authority as to why Ziegler is not qualified to give his opinion on casing defect. Further, having reviewed the record, the Court rejects Travelers' argument that Ziegler's opinions failed to take into account the full make-up of the well. *See, e.g.,* App. in Supp. of Pl. Resp. at 4-5 (Ziegler Dep. at 146:18-147:20) ("we know exactly what all the pressures were, what all the components were.").

### 2.    John Slater

John Slater is a metallurgist who will testify for Plaintiffs that the casing should not have failed at the pressures exerted.  Slater Report at 4, ECF No. 91-4.  Travelers argues Slater's opinion that the casing should not have failed at the pressures exerted should be struck because Slater was never able to analyze the particular piece of casing that failed.  Brief in Supp. of Travelers' Mot. to Exclude Non-Metallurgy Opinions of Slater at 6-7. ECF No. 171.  Plaintiffs counter that the lack of an actual piece of failed casing does not inhibit Slater's ability to opine that cyclic over-pressurization was likely not a cause of this casing failure because the casing should not have failed at the pressures exerted.  According to Plaintiffs:

> Slater's testing of a sample of casing from the well to determine its actual strength, using API formulas to calculate a pressure that would cause the casing to physically burst, and comparing pressure that was placed on the casing to the supposed strength of the casing are "good grounds" to base an expert opinion that over-pressurization was not a viable cause of the failure and that defective casing could be a viable possibility.

Brief in Supp. of Pl. Resp. to Mot. to Exclude Non-Metallurgy Opinion of Slater at 4, ECF No. 214.  The Court agrees.  "[I]t would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science . . . Proposed testimony must be supported by appropriate validation, i.e. 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590.   Slater's testimony meets these requirements.

Travelers also contends that Slater's opinion regarding over-pressurization fails to account for "variables" and should be struck.  Brief in Supp. of Travelers' Mot. to Exclude Non-Metallurgy Opinions of Slater at 8-9.  The Court agrees with Plaintiffs that this argument goes to the substance of Slater's opinions, not the methodology or reasoning used.  This motion is not the appropriate

vehicle for disagreeing with Slater's opinions. *See Watkins*, 121 F.3d at 989. Further, whether the conditions under which Slater tested the casing are the same as the conditions the date of the blowout is immaterial to whether his testimony will be of assistance to the jury. Travelers may point out to the jury any differences regarding actual conditions during cross-examination.

In sum, judged by the standards of FED. R. EVID. 702 and Supreme Court precedent, the Court finds that Travelers' motion should be denied. Slater's conclusions are based on his knowledge of the type of casing present in the well, the pressures exerted on the casing, and how casing should behave when faced with those pressures. His analysis and methodology, as well as his wealth of experience in the oil and gas industry and his education, are more than sufficient to overcome Travelers' *Daubert* challenge.

Travelers' motion to exclude the non-metallurgy opinions of Slater is denied.

### 3.   John Tintera

John Tintera was the Executive Director of the Texas Railroad Commission at the time of the blowout and a licensed geologist, who will testify for Plaintiffs about how Railroad Commission rules operate regarding the pressures operators are allowed to use and as applied to the facts and circumstances of this case. Travelers moves to exclude Tintera's opinions regarding his interpretation of TRC Rule 3.13, and the existence of a violation of that Rule (or lack thereof) because: (1) the Court must interpret the meaning of TRC rules as a matter of law and Tintera's view on the meaning of a rule or the existence of a violation are not proper expert opinion, and (2) it is improper to conclude that a party did not violate a TRC rule simply because there was no TRC enforcement action. *See* Def. Mot. to Exclude Opinions of John Tintera at 1, ECF No. 172.

Plaintiffs state they sought the expert opinions of John Tintera because Travelers refused to acknowledge the entirety of the Railroad Commission's Statewide Rule 3.13 regarding the testing and pressuring of casing placed in a well.  Plaintiffs point out that Travelers' motion to exclude Tintera explicitly fails to cite the entire rule to the Court.  At the time of the Monroe 39 #2H blowout, Rule 3.13 stated:

> All casing cemented in any well shall be steel casing that has been hydrostatically pressure tested with an applied pressure at least equal to the maximum pressure to which the pipe will be subjected in the well. For new pipe, the mill test pressure may be used to fulfill this requirement. As an alternative to hydrostatic testing, a full length electromagnet, ultrasonic, radiation thickness gauging, or magnetic particle inspection may be employed.

Plaintiffs contend that Tintera's testimony is vital to the jury's understanding of the Railroad Commission's application of Rule 3.13 regarding the pressures operators are allowed to use if they rely on the alternative testing performed at the mill rather than the pressure used in the mill's hydrostatic test.  According to Plaintiffs, Tintera's opinion— that an operator such as Eagle Oil could use pressures up to the pipe specifications, and not be restricted to the mill's hydrostatic pressure test by virtue of the application of the last sentence of Rule 3.13—is necessary to rebut Travelers' argument that only the mill's hydrostatic test pressure may be used.

Plaintiffs also contend that testimony regarding how Railroad Commission rules operate and how they are applied under the facts and circumstances of this case do not fall within the ambit of restricted "legal conclusions" and are admissible under Federal Rule of Evidence 704(a) and 702. Plaintiffs state they are not presenting Tintera for any opinions on the ultimate issue of this case, namely, Plaintiffs' compliance with reasonable prudent operator standards.  Rather, Plaintiffs argue that they will present Tintera for a factual review of Railroad Commission Rule 3.13, how the

21

Railroad Commission interpreted and enforced Rule 3.13, and whether Plaintiffs violated Rule 3.13 (or any other pertinent Railroad Commission Rules).  Plaintiffs assert that no legal interpretations or conclusions are required for Tintera to testify that the casing tests performed at the mill fit within the purview of Rule 3.13 from the perspective of the Railroad Commission, and that the same holds true for his opinions regarding what pressures operators may use if the casing's mill electromagnetic test is "passed."  Plaintiffs further assert it is a question of fact as to whether Eagle Oil was cited by the Railroad Commission for any violations of Rule 3.13, and Tintera can answer such question without providing any opinions on how this relates to Plaintiffs' compliance with reasonably prudent operator standards.

As former Executive Director of the TRC, the Court will allow Tintera to testify regarding whether an enforcement action was brought against Plaintiffs.  Tintera will also be permitted to testify whether the casing tests performed at the mill fit within the purview of Rule 3.13 from the perspective of the Railroad Commission, and to testify regarding what pressures operators may use if the casing's mill electromagnetic test is "passed."  The Court , however, will not allow Tintera to invade the province of the jury by telling the jury what result to reach or to give legal conclusions. *See generally Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 197-98 (5th Cir. 1996) (upholding district court's exclusion of two experts' reports that answered exact question jury was to be asked); *Diamond Offshore Co. v. Survival Systems Inter., Inc.*, 2013 WL 371648, at *8 (S.D. Tex. Jan. 29, 2013) (excluding portion of expert's opinion that concluded the defendant breached its duty of care and acted negligently in failing to warn, as these were opinions that did nothing more than offer experts' view of how the jury's verdict should read.); FED. R. EVID. 704.

Travelers' motion to strike and exclude is granted insofar as Tintera seeks to offer opinions that supply the jury with no information other than his expert view of how its verdict should read. FED. R. EVID. 704.  Travelers' motion is denied in all other part.

## IV.    Conclusion

As a general matter, the remaining experts (Hansen, Ziegler, Slater, and Tintera) base their opinions on facts in the record and extensive experience in the oil and gas industry.  As far as the general contention raised in all the *Daubert* motions considered above that these experts draw improper factual conclusions or rely on their own ipse dixit, the challenging party may attempt to discredit such testimony through "[v]igorous cross-examination [and] presentation of contrary evidence," which are the "appropriate means of attacking" disputed evidence relied upon by experts. *Daubert*, 509 U.S. at 596; *see Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("The fact finder is entitled to hear [the expert's] testimony and decide whether it should accept or reject the testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate."); *Nova Consulting Grp., Inc. v. Eng'g Consulting Srvs., Ltd.*, 290 Fed. Appx. 727, 733 (5th Cir. 2008) (relying on same *Daubert* quote and noting that it is not the role of the trial court to evaluate whether the facts underlying the expert's opinion are correct); *see also Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

For the reasons stated above, the Court **denies in part and grants in part** Plaintiffs' Motion to Strike and Exclude Judd Hansen's Reports and Testimony (ECF No. 157); **grants** Plaintiffs' Motion to Strike and Exclude Greg Sones's Reports and Testimony (ECF No. 164); **denies**

23

Defendants' Motion to Strike Untimely Supplemental Report and Exclude Defective Casing Opinion of Plaintiffs' Expert Edward Ziegler (ECF No. 165); **denies** Defendants' Motion to Exclude Non-Metallurgy Opinions of Plaintiffs' Expert John Slater (ECF No. 170); **denies in part and grants in part** Defendants' Motion to Exclude Opinions of Plaintiffs' Expert John Tintera, filed June 23, 2014 (ECF No. 172); **denies as moot** Defendants' Motion to Strike and Exclude Opinions of Plaintiffs' Expert John Meloy (ECF No. 160); and **denies as moot** Defendants' Motion to Strike Untimely Supplemental Report and Exclude Bad Faith Damages Calculation Opinion of Plaintiffs' Expert Tim Smith  (ECF No. 168).

　　　**SO ORDERED** this **30th day** of **July, 2014.**

_____

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**